UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHIP NELSON,

          Plaintiff,          Case No. 13-13176
                                    Hon. Denise Page Hood

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 14) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 17)**

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Chip Nelson's Motion for Summary Judgment **[Docket No. 14, filed November 27, 2013]** and Defendant Commissioner's Motion for Summary Judgment **[Docket No. 17, filed February 28, 2014]**. For the reasons stated below, the Court **GRANTS** Plaintiff's Motion.

## II.    SOCIAL SECURITY ACT DISABILITY BENEFITS FRAMEWORK

Under 42 U.S.C. § 423, a wage earner suffering from a disability is entitled to disability benefits. The act defines disability as an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The claimant bears the burden to prove entitlement to benefits. *Dice v. Comm'r of Soc. Sec.*, No. 12-CV-11784, 2013 WL 2155528, at *6 (E.D. Mich. Apr. 19, 2013).  To determine if a person is disabled, and eligible for benefits, the Commissioner uses a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that significantly limits ... physical or mental ability to do basic work activities, benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work

experience, benefits are denied.

*Id*. (citing 20 C.F.R. § 404.1520). For the first four steps, the claimant bears the burden to prove the severity of impairment and that it precludes performing work. *Spreeman v. Comm'r of Soc. Sec.*, No. 12-12641, 2013 WL 5212023, at *2 (E.D. Mich. Sept. 16, 2013). At the fifth step, the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant is qualified to perform despite impairment. *Id*. To meet this burden, the Commissioner's decision must be supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Id*.

### III. BACKGROUND AND ADMINISTRATIVE HISTORY

#### A. Background

On September 9, 2010, Nelson filed for Supplemental Security Income, Social Security Disability Benefits, and Child Disability Benefits alleging an onset of disability on August 30, 1990. Nelson's application for benefits was denied. Nelson proceeded to request a hearing. On

November 1, 2011, Nelson appeared with counsel before Administrative Law Judge ("ALJ") Thomas L. English. During the hearing, Nelson testified about his impairments. Vocational Expert ("VE") Heather Benton appeared, but she did not testify. On February 9, 2012, the ALJ issued an unfavorable decision denying Nelson benefits. The ALJ said Nelson was not disabled as defined by the Social Security Act. The Appeals Council was asked to review the adverse determination. It received additional information regarding Nelson's post hearing psychiatric treatment. The Appeals Council denied Nelson's request for review, and the decision of the ALJ became the final decision of the Commissioner.

Nelson filed a motion for summary judgment seeking judicial review from this Court. He says the ALJ's decision was not supported by substantial evidence and the ALJ erred by: (1) rendering a mental RFC finding without considering the evidence of the record; (2) failing to elicit Vocational Expert ("VE") testimony; and (3) failing to apply SSR 02-1P in evaluating Nelson's obesity. In response, Commissioner filed its own motion for summary judgment. It says the ALJ did not commit any errors and the decision is supported by substantial evidence.

    **B.**    **Administrative Record**

4

### 1. Hearing Testimony

On November 1, 2011, a hearing was held before ALJ English regarding Nelson's request for benefits. During the hearing, Nelson testified that he was 6 feet tall and weighed 425 pounds. He said that had not worked since 2009. He said that at his previous job, he was unable to keep up with the work demands and he was underperforming. He noted that it took him four days to understand the basic requirements of the job, while in his opinion, it took others only a day.

Nelson discussed his difficulties interacting and socializing with others. He noted that at his last job he was afraid to talk to people. Nelson continued to explain that he had difficulties interacting with others all his life and he would force himself to speak to others. Nelson testified that he had troubling breathing when in certain social situations. When Nelson goes grocery shopping, he waits until the grocery aisles are empty in order to avoid groups of people. When he approaches a cashier, he has the tendency to drop his wallet and stumble over his words. He said he could not read body language and he could easily misinterpret a person's comments by taking them in their literal sense.

Nelson discussed what he thought prevented him from working. He said he suffered from foot pain, which would require him to take frequent breaks.  He also discussed his social difficulties and noted that his moods can be inconsistent. Nelson testified he was on medication for his depression. The medication helped somewhat, but he suffered from uncontrollable angry outbursts. These outbursts occurred once every two to three weeks.

Nelson said he was hospitalized for three days following an argument with his roommate. During the incident, he repeatedly punched himself in face in an effort to lose consciousness and stated that he wanted to end his life. The ALJ noted that Nelson had three suicidal incidents in the past. In fact, Nelson explained that the night before the hearing, he was depressed as a result of an incident with his roommate, and that again he had suicidal ideations.

Nelson reported that sometimes he suffered from sleeping problems; he can go up to 36 hours without sleep. He said that he has trouble taking care of himself. He bathes maybe once every week or two. When he showers, he says he feels weird, dirty, and cold.

The ALJ did not elicit any testimony from the VE and he did not explain why he failed to do so.

### 2. ALJ Findings

The ALJ applied the five-step sequential analysis, and concluded that Nelson was not disabled as defined by the Social Security Act.

At step one, the ALJ found the Nelson had not engaged in substantial gainful activity since August 30, 1990.

At step two, he concluded Nelson suffered from the severe impairment of adjustment disorder.

At step three, the ALJ concluded Nelson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Nelson has the residual functional capacity to perform a full range of work all at exertional levels, except he is limited to unskilled work and he can only have occasional contact with the general public.

The ALJ did not find credible Nelson's testimony concerning the intensity, persistence, and limiting effects of his symptoms to the extent

7

they were inconsistent with the residual functional capacity assessment. The ALJ noted that Nelson was undergoing psychological treatment and taking medications which Nelson indicated worked well. None of Nelson's therapists, psychologists, or psychiatrists indicated that Nelson was totally disabled and unable to perform any work activity. Nelson's treating physicians did not opine on his ability to work. The ALJ said Nelson could perform daily living activities with some reminders. The ALJ stated that Nelson was assessed scores of GAF 57 to 60, which "are at the high end of only moderate symptoms." **[Docket 10-2 at 23, filed September 30, 2013]**. The ALJ noted, while Nelson is "certainly restricted as to the types of work he is capable of performing, objective medical evidence fails to establish that these impairments are of a sufficient severity to preclude his ability to perform full-time work activity." **[Docket 10-2 at 23, filed September 30, 2013]**.

The ALJ noted that the medical record failed to reasonably support the level of limitations as described by Nelson. He said the evidence as a whole does not suggest or establish that Nelson "lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for

vocational involvement that is simple and routine in nature." **[Docket 10-2 at 23, filed September 30, 2013].**

At step four, the ALJ noted that Nelson did not have any past relevant work experience.

At step five, after considering Nelson's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Nelson can perform. For this determination, the ALJ consulted the Medical–Vocational Guidelines. The ALJ noted while Nelson's ability to perform work at all exertional levels has been compromised by his nonexertional limitations, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels.

## IV. STANDARD OF REVIEW OF COMMISSIONER'S FINAL DECISION

A person may seek judicial review of any final decision of the Commissioner of Social Security; however, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

9

support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). And, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

"In determining whether the Secretary's factual findings are supported by substantial evidence, a court must examine the evidence in the record taken as a whole, and take into account whatever in the record fairly detracts from its weight." *Id*. (citations omitted). When reviewing the Commissioner's decision, the court may consider only the record that was before the ALJ, and cannot review the evidence de novo, weigh the evidence, or make credibility determinations. See, *id*. However, even if an ALJ's decision is supported by substantial evidence, the decision will not be upheld if the Commissioner "fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.2007).

## V. ANALYSIS

### A. The ALJ Neither Erred by Improperly Discounting the Opinions of Nelson's Physicians, Nor Failed to Consider Nelson's Alleged Moderate CPP Limitations

Nelson says the ALJ erred by discounting the opinions of the physicians who scored Nelson with a 50 for his GAF. An ALJ must support his opinion with substantial evidence. This burden is lower than a preponderance of the evidence. *Brainard*, 889 F.2d at 681. While different minds may disagree as to the impact of Nelson's GAF scores, there is evidence in the record that supports the ALJ's findings in relation to Nelson's higher GAF scores.

In addition, Nelson failed to explain how the simple act of being assessed a lower GAF score, while not being in treatment, automatically precludes work activity. Without this explanation, the Court cannot find that the ALJ erred in using Nelson's other, more recent, GAF scores.

Nelson also says the ALJ erred when he failed to evaluate Nelson's GAF scores in conjunction with his moderate impairment regarding

11

concentration, persistence, and pace. The ALJ determined that Nelson had a mild impairment relating to concentration, persistence, and pace - not moderate. Therefore, this argument lacks merit. The ALJ erred in his findings, but not for the above reasons.

### B. The ALJ Failed to Properly Evaluate Nelson's Non-Exertional Impairment

Nelson says the ALJ erred when he determined that there exists a significant number of jobs in the national economy without consulting a vocational expert, but rather, relying on the Medical–Vocational Guidelines ("Grids"). An ALJ may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). The ALJ must treat the grids as only a framework, and rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir.1990). To sustain his burden, the ALJ must either consult a vocational expert or "demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational

12

base." *Edwards v. Comm'r of Soc. Sec.*, No. 12-11789, 2012 WL 6962977, at *8 (E.D. Mich. Dec. 17, 2012).

Unskilled jobs at all levels of exertion make up the potential occupational base. The Social Security Ruling states that the mental demands of unskilled work are "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15; *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009).

The ALJ failed to explain how Nelson's nonexertional impairment of "limited contact with the general public" fails to eliminate a significant number of jobs or how his impairment fails to significantly impact any of the mental demands of unskilled work. Instead, the ALJ incorrectly states that Nelson is not "disabled based on the vocational expert's testimony finding a significant number of jobs available." Yet, parties agree that the vocational expert did not offer any testimony. The ALJ goes on to state in a conclusory fashion that Nelson's "ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled

13

work at all exertional levels." **[Docket No.10-2, pg. 24, filed September 30, 2013].** The ALJ failed to examine or explain how Nelson's limitation affects his ability to respond appropriately to supervision, coworkers, or usual work situations.

Accordingly, the ALJ failed to carry his burden at Step Five of the sequential analysis.

### C. The ALJ Failed to Adequately Evaluate Nelson's Obesity

Obesity does not have its own disability listing. Nonetheless, an ALJ is required to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). Social Security Ruling 02-1p provides some guidance as to how an ALJ should evaluate obesity. It notes that while an ALJ need not employ a "particular mode of analysis" when considering the impact of obesity, simply mentioning obesity in passing will not suffice. *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411–12 (6th Cir.2006); *Norman v. Astrue*, 694 F. Supp. 2d 738, 741 (N.D. Ohio 2010). Courts have remanded even for the mere failure of considering obesity. *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D.Vt.2009). Nelson

claims that he has foot pain and cannot stand for long periods of time due to his obesity. He says the ALJ should have evaluated the impact of obesity on his ability to perform work. ALJ English noted Nelson's obesity and concluded:

> . . . the claimant has the non-severe impairment of obesity. The claimant has not alleged, nor does the record establish any limitations due to obesity. Therefore, I find that the claimant's obesity is not a "severe" impairment since there no significant work-related limitations imposed by his obesity. Claimant also alleged pain in his feet that keeps him from working. There is no evidence to support this allegation.

**[Docket No. 23, 10-2 pg. 22, filed September 30, 2013]**.

The ALJ failed to examine Nelson's obesity in conjunction with his observation that Nelson was limited to unskilled work and occasional contact with the general public. The ALJ says the record is devoid of any complaints of foot pain. Nelson's various medical records indicate his weight, note his obesity, and indicate that he had foot surgery. **[Docket No. 10-7, pg 265, 278, 280 filed September 30, 2013**; Docket No. 10-7, pg. 275, **filed September 30, 2013]**. Therefore, the ALJ should have evaluated how his obesity and the alleged foot pain impacted his ability to perform unskilled work.

Since the ALJ failed to properly analyze Nelson's obesity in conjunction with his other limitations the ALJ's the Court cannot uphold ALJ's decision as being supported by substantial evidence. See also *Johnson v. Astrue*, Case No. 08–3658, 2010 WL 148411 at *18 (S.D.Tex. Jan. 11, 2010) ("[T]he ALJ should develop the record on the issue of [the claimant's] obesity and how her obesity impacted her ability to function and work"); *Norman*, 694 F. Supp. 2d at 742 examining *Priestley v. Astrue*, Case No. 6:08–546, 2009 WL 1457152, at *14 (D.S.C.2009) ("the ALJ merely claimed he considered Plaintiff's obesity in determining his assessment. He failed to provide any explanation as to how this severe impairment factored into his assessment. Given this utter lack of explanation, the Government was not substantially justified in taking the position that the ALJ properly executed his duties with regard to assessing Plaintiff's obesity.").

**V.    CONCLUSION**

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse the ALJ and remand the matter for rehearing, or reverse and grant benefits. See, *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100, 111 S. Ct. 2157, 2164, 115 L. Ed. 2d 78

(1991) ("Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision.").

Accordingly, the Court **GRANTS** Nelson's summary judgment motion **[Docket No. 14, filed November 27, 2013]**. The Court **DENIES** the Commissioner's summary judgment motion. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the matter is **REMANDED** for further proceedings in accord with this decision.

**IT IS SO ORDERED.**


s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2015, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

17